UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LEILA LENORE,**<br>Individually and on behalf of other<br>similarly situated employees and<br>former employees,<br><br>      Plaintiff,<br><br>v.<br><br>**OKLAHOMA BLOOD INSTITUTE,**<br>An Oklahoma not for profit corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-17-1326-M<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## COLLECTIVE ACTION COMPLAINT

COMES NOW, Plaintiff Leila Lenore, and for her Collective Action Complaint against Defendant Oklahoma Blood Institute, alleges and states as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff Leila Lenore ("Plaintiff" or "Lenore") is an individual residing in Oklahoma, and brings this action individually and on behalf of other similarly situated employees and former employees of Defendant pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A § 201 et seq., specifically §§ 206 and 207(a)(1).

2. Defendant Oklahoma Blood Institute ("Defendant" or "OBI") is an Oklahoma not for profit corporation with its principal place of business in Oklahoma City, Oklahoma, and at all times mentioned in this Complaint, employed Plaintiff and others similarly situated.

3. Jurisdiction of this action is conferred on this Court by 29 U.S.C.A § 216(b), and by the provisions of 28 U.S.C.A. §§ 1331 & 1337.

4. Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391(b)(1).

## SPECIFIC ALLEGATIONS
### Plaintiff Leila Lenore

5. Plaintiff realleges and incorporates by reference herein Paragraph Nos. 1 through 4 of the Complaint.

6. On or about April 11, 2017, Plaintiff answered Defendant's online solicitation for employment for a job titled "Outside Sales Representative/Event Planner."

7. On or about April 20, 2017, Defendant formally confirmed its offer of employment to Plaintiff in which Plaintiff's position would be Account Consultant I, reporting to the Executive Director. *See* the "Employment Letter", attached hereto as Exhibit "1".

8. During the course of Plaintiff's employment with OBI, she has been referred to as 1) Recruiter; 2) Account Consultant; 3) Mobile Recruiter; and 4) Blood Program Consultant.

9. The Employment Letter stated, *inter alia*, that "As a full-time Exempt employee" she would receive an annual salary of $48,000. *Id.*

10. The Employment Letter further stated "Your normal working hours/days will be 8:00 a.m. to 5:00 p.m. Monday through Friday. The hours may vary based on business need and/or the request of your supervisor or management." *Id.*

11. As such, instead of the job she applied for, "Outside Sales Representative/Event Planner," Plaintiff was hired as an Account Consultant I.

12. In addition to the Employment Letter, Plaintiff received a document titled "Oklahoma Blood Institute Exempt Position Description." *See* "Exempt Description", attached hereto as Exhibit "2".

13. The Exempt Description gives no definition for "Exempt," no reference is made to the FLSA, and no justification is given as to why the OBI classifies an Account Consultant I as exempt from the application of the FLSA.

14. The Exempt Description defines the Position Objection/Purpose of an Account Consultant I as:

> Under the direction of the assigned supervisor, the Account Consultant I provides service excellence in promoting mobile blood drive programs for the recruitment of potential blood donors. Recruits new donor groups and promotes growth in existing groups for established territory. Account Consultants are expected to meet performance metrics and achieve assigned collection goals.
>
> *Id.*

15. The Exempt Description describes the primary responsibilities of an Account Consultant I, in part, as: scheduling blood drives; identifying opportunities for growth within current group base; soliciting and recruiting new groups and organizations for mobile drives; rebooking recurring mobile drives for the following year; and, importantly, performing all other duties as may be assigned by a supervisor. *Id.*

16. Plaintiff sold nothing for OBI.

17. Plaintiff solicited donations for OBI.

18. Plaintiff began training at OBI on May 1, 2017, and continued training until July 31, 2017.

19. On June 23, 2017, Plaintiff's supervisor, Executive Director of the Ada and Ardmore OBI Centers Susan Crews ("Crews"), sent Plaintiff and certain other OBI employees an email titled "Work hours" stating:

> Since we have new people I want to make sure everyone understands the expectations around work hours. I expect you to be at work no later than 8:30 and leave no earlier than 5:00. If you need to leave early or come in later, please just let me know by text, it is not ok to leave early without letting me know. I expect the majority of the time you will work until 5.

*See* 6.23.17 Email, attached hereto as Exhibit "3".

20. Plaintiff was required to work an 8:30 a.m. to 5:00 p.m. shift Monday through Friday without being tardy.

21. Plaintiff was required to notify Crews of her whereabouts.

22. Plaintiff was subject to OBI's control over her day-to-day activities.

23. It became clear to Plaintiff during training, and subsequently during the course and scope of her employment, that the bulk of her job would consist of soliciting donations and/or soliciting and recruiting groups for mobile blood drives.

24. In the first month of Plaintiff's employment after her training ended, she was responsible for thirty-two (32) blood drives.

25. Plaintiff worked the following hours the first month after her training ended:

   a. 7/30/17 – 8/5/17: 41.50 hours
   b. 8/6/17 – 8/12/17: 53.00 hours
   c. 8/13/17 – 8/19/17: 62.50 hours
   d. 8/20/17 – 8/26/17: 46.75 hours
   e. 8/27/17 – 9/2/17: 48.00 hours

26. As shown above and subsequently below, OBI had expectations that Plaintiff work well above the typical forty (40) hour work week, performing work past 5 p.m. and also on the weekends.

27. Plaintiff emailed Crews on August 16, 2017, inquiring: "How are drives worked on weekends typically factored into a recruiter's week? Also, for example, if I schedule to speak at a church on a Sunday." *See* 8.16.17 Email, attached hereto as Exhibit "4".

28. Rather than responding via email, Crews called Plaintiff on August 16, 2017, advising her that she was "paid to get the work done" and that OBI does not offer "comp time," even though Plaintiff's inquiry was clearly in reference to flex time, or the ability to have a flexible schedule.

29. During this same phone conversation, Crews instructed Plaintiff to start coming to the office earlier and staying later than the other recruiters because Plaintiff was not as "efficient" and needed to "work more hours, not less."

30. Exhausted from forced overtime, Plaintiff reached out to Diana Blakeney ("Blakeney"), OBI's Human Resource Manager via email on Saturday, September 2, 2017, with the Subject Line: "Outside Sales/Event Planner Advertisement." Plaintiff specifically wrote in her email, "As I have been classified as 'exempt outside sales' I would like a better understand [sic] of what exactly it is that I am supposed to be selling." *See* 9/2/17 Email, attached hereto as Ex. "5".

31. Blakeney did not respond or call. Plaintiff resent a duplicate email to Diana Blakeney on Tuesday, September 5, 2017 (same subject line and text). Plaintiff never

received a response on either of her emails to Blakeney. *See* 9/5/17 Email, attached hereto as Ex. "6".

32. On Saturday, September 9, 2017, shortly after midnight (12:32 AM) Crews emailed Plaintiff with the Subject Line: "Fwd: Training tasks that are due, past due, or due tomorrow." Plaintiff responded to this email on Monday, September 11, 2017, at 9:00 AM via email, "Will do. Thank you." Shortly thereafter, Crews called Plaintiff and berated her for not completing the task on Sunday, September 10, 2017, and implied the reason recruiters were given laptops was for logging onto OBI's secure website regardless of day, even if it was on a non-work day. *See* 9/9/17 to 9/11/17 Email String, attached hereto as Ex. "7".

33. Within minutes after this Monday morning berating for not completing a task on a Sunday, Plaintiff typed up her two-week notice, walked into Crew's office, and handed it to her. *See* Two Week Notice, attached hereto as Ex. "8".

34. Crews continued to harass Plaintiff when on September 11, 2017, at 12:53 pm she sent a text to Plaintiff, "Hey…when you leave, please let someone know where your [sic] going. If no one is here, then call Alisha and let her know." Plaintiff was at lunch.

35. On Wednesday, September 13, 2017, Crews further explained via email the process she expected Plaintiff to follow when leaving the building: "You just need to let whoever is there know…even if it is the volunteer. If no one is in the office, then you let Alisha know." Plaintiff found this new requirement embarrassing as she was the only

recruiter, under Crews' supervision, who was required to report when she was leaving the building.

36. Frustrated by the terms and circumstances of her employment, the continued harassment by her direct supervisor (Crews), and particularly the exempt status placed upon her by OBI without justification, Plaintiff reached out to OBI's Director of Human Resources, Joseph McNeil ("McNeil"), via email on September 21, 2017. *See* 9.21.17 Email String, attached hereto as Exhibit "9".

37. In her email, Plaintiff asked McNeil about the exempt status of Account Consultants, noting that she does not sell anything and instead merely solicits donations. *Id.*

38. In response, McNeil stated:

> The general rule for Exempt status that I have always used…is for those position [sic] who have management capability over the hours they work (and aren't in a 'production' situation where they have no control over work coming down the pike from somewhere else day to day)…qualify under Federal FLSA (Fair Labor Standards Act).
>
> In general…training situations really don't factor in for such positions.
>
> It's always been determined and agreed upon by Management that your position is one where you have control over the timing, efficiency and effectiveness of your time worked…and are ultimately in control of how your day goes and when you can take off. Like all of us…you get paid the same amount whether you have to work 60 hours in a week…or have a light week and have to take off early a few days for a doctor's appointment or kid emergency a couple of days.
>
> Hopefully…overall the average works out to be reasonable and that you aren't being overworked and having to work 60 hours every week. If that's the case…I encourage you to talk to your boss about an increase in rate or reallocation of work load. Now…since bonuses are in the picture…for that

extra hard work for sales folks…there is to some degree the "overtime" compensation for that extra time and effort.

*Id* [Ellipses in original].

39. Plaintiff found McNeil's response to her questions in direct contrast to the working conditions and harassment she had been subjected to under Executive Director Crews. Furthermore, Plaintiff found McNeil's reply and subsequent emails both unprofessional and intimidating.

40. Plaintiff's last day of employment with OBI was September 22, 2017.

41. Before Plaintiff left OBI for the last time, Crews handed Plaintiff a document titled, "Voluntary Separation" to complete and sign. Plaintiff crossed out the word "voluntary" and wrote, "Constructive Discharge. Flextime not allowed. Forced Overtime." Plaintiff handed Crews the document and left the building. Plaintiff clearly documented that her leaving was not voluntary. *See* "Voluntary" Separation Document, attached hereto as Ex. "10".

## GENERAL/CLASS ALLEGATIONS

42. Plaintiff realleges and incorporates by reference herein Paragraph Nos. 1 through 41 of the Complaint.

43. Plaintiff, and other similarly situated employees and former employees (collectively, "Plaintiffs") are/were employed by Defendant.

44. Defendant is an employer within the meaning of the FLSA and Plaintiffs' employment with Defendant is/was subject to the provisions of the FLSA.

45. Defendant purposely and wrongfully misclassifies Account Consultants as exempt from the application of the FLSA to deprive them of overtime pay, contrary to 29 U.S.C.A § 207(a).

46. Defendant's misclassification of certain employees as exempt from the application of the FLSA, unlawfully abrogates Defendant's obligation to pay overtime compensation to Plaintiffs.

47. Defendant's deliberate manipulation of the classification of Plaintiffs as exempt from FLSA protection constitutes a malicious willful violation of the FLSA in that Defendant knew, or should have known, of the provisions pertaining to overtime pay contained in the FLSA.

## COUNT I: VIOLATION OF FLSA

48. Plaintiff realleges and incorporates by reference herein Paragraph Nos. 1 through 47 of the Complaint.

49. OBI had and continues to have a legal obligation to pay non-exempt employees overtime pay under the FLSA.

50. OBI failed to pay Plaintiff and other similarly situated employees and former employees for overtime pay due under the FLSA and continues to do so.

51. OBI's failure to pay employees and former employees overtime pay as required under the FLSA has resulted in damage to Plaintiff and other similarly situated employees and former employees in an amount to be determined through the discovery process.

52. OBI's failure to pay overtime pay as required under the FLSA is a willful violation of the FLSA, entitling Plaintiff and other similarly situated employees and former employees to liquidated damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Leila Lenore, on behalf of herself and other similarly situated employees and former employees, respectfully requests that this Court grant the following relief:

- A. Declaratory judgment that OBI's practices complained of are unlawful under the FLSA;
- B. An award of unpaid overtime wages due under the FLSA;
- C. An award of liquidated damages and/or punitive damages as a result of Defendant's knowing and willful failure to pay overtime compensation pursuant to the FLSA;
- D. An award of prejudgment and postjudgment interest;
- E. An award of costs and expenses associated with this action, together with reasonable attorneys' fees;
- F. Conditional certification of all current and former Account Consultants, and any other similarly situated OBI employee/former employee:
    - a. Who are non-exempt under the FLSA but were wrongfully classified as exempt;
    - b. Who were employed by OBI for any time during the period of time three (3) years before each opts-in this action; and

    c. Who were obligated to work more than forty (40) hours in a given workweek, but were not compensated at a rate one and one-half times their regular pay rate for the hours worked in excess of forty (40) hours.

G. Leave to add additional parties as discovery proceeds;

H. Leave to amend this Complaint and add additional claims under applicable state and federal law; and

I. All such further relief the Court deems just and equitable.

        Respectfully submitted,

/s/ Rand C. Eddy
Rand C. Eddy, OBA #11822
Riley W. Mulinix, OBA #30654
Joshua K. Hefner, OBA #30870
MULINIX GOERKE & MEYER, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, Oklahoma   73102
Telephone: (405) 232-3800
Facsimile: (405) 232-8999
rand@lawokc.com
riley@lawokc.com
jhefner@lawokc.com

Attorneys for Plaintiff